**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **STEELHEAD LICENSING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**AMAZON.COM, INC.,**<br><br>Defendant. | C.A. No.________________<br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Steelhead Licensing LLC ("Steelhead"), by and through its undersigned counsel, for its Complaint against Amazon.com, Inc. ("Amazon" and/or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") to prevent and enjoin Defendant from infringing and profiting, in an illegal and unauthorized manner and without authorization and/or consent from Steelhead, from U.S. Patent No. 5,491,834 (the "'834 Patent"), attached hereto as Exhibit A) pursuant to 35 U.S.C. §271, and to recover damages, attorneys' fees, and costs.

## THE PARTIES

2. Plaintiff Steelhead is a Delaware limited liability with its principal place of business at 222 Delaware Avenue, PO Box 25130, Wilmington, DE 19899.

3. Amazon is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109-5210. Amazon can be served with process

through its agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4. Amazon is in the business of making, using, selling, offering for sale and/or importing portable computing devices.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. §§1 et seq.

6. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction, as well as because of the injury to Steelhead and the cause of action Steelhead has raised, as alleged herein.

7. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Delaware Long-Arm Statute, *Del Code. Ann. Tit. 3, §3104*, due to at least their substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Delaware.

8. Defendant has conducted and does conduct business within the state of Delaware, directly or through intermediaries, resellers, agents, or offers for sale, sells, and/or advertises products in Delaware that infringe the '834 Patent.

9. In addition to Defendant's continuously and systematically conducting business in Delaware, the causes of action against Defendant are connected (but not limited) to Defendant's purposeful acts committed in the state of Delaware, including Defendant's making, using,

importing, offering for sale, or selling products which include features that fall within the scope of at least one claim of the ‘834 Patent.

10. Venue lies in this District under 28 U.S.C. §§1391 and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has committed and continues to commit acts of patent infringement in this District. For example, Defendant has used, sold, offered for sale, and/or imported infringing products in this District.

## FACTUAL ALLEGATIONS

11. On February 13, 1996, the United States Patent and Trademark Office (“USPTO”) duly and legally issued the ‘834 Patent, entitled “Mobile Radio Handover Initiation Determination” after a full and fair examination. Steelhead is presently the owner of the patent and possesses all right, title and interest in and to the ‘834 Patent. Steelhead owns all rights of recovery under the ‘834 Patent, including the exclusive right to recover for past infringement. The ‘834 Patent is valid and enforceable.

12. The ‘834 Patent contains eight independent claims and twelve dependent claims. Defendants commercialize, *inter alia*, methods that perform all the steps recited in one or more claim of the ‘834 Patent. Defendant makes, uses, imports, and sells or offers for sale products, including portable devices, which encompass one or more of the features recited and which perform all the steps comprised in the patented claims.

13. The invention claimed in the ‘834 Patent includes a process for determining the manner in which handover is performed in a mobile radio network including a plurality of cells, where each cell is associated with a base station supporting communication with a mobile device.

14. The patented process includes the steps of monitoring the quality of a signal as a function of time respectively transmitted between candidate base stations and the mobile unit. The process further includes producing an indication of either the rise or fall of the signal's quality as a function of time. Handover from a serving base station supporting communication with the mobile unit to another base station is initiated based on the rise or fall in the signal's quality.

15. Portable computing devices (such as notebooks, laptops, tablets, and similar devices) may connect to the Internet using a wired or wireless interface. Examples of such wireless interfaces include the so-called WiFi or 3G connections. While the WiFi relies on a static point of access, a 3G connection allows users to move (or "roam") along with their computer devices without losing connectivity. In these instances, communication is handed over from one communication cell to another, much like mobile phones relying on the same technology.

16. Manufacturers of portable devices rely on the patented process to handle service associated with such portable devices. Specifically, Defendant relies on the patented process to determine the manner in which communication service associated with a portable device is to be handed over from one cell to another.

17. Defendant commercializes portables devices which support both Universal Mobile Telecommunications System (hereinafter, "UMTS") and Long Term Evolution (hereinafter, "LTE") standards. These products will be hereinafter identified as "Amazon UMTS/LTE Products".

18. UMTS is a third-generation (3G) of mobile phone technology for radio systems. It is an integrated solution for mobile voice and data capabilities with wide area coverage. It

allows users to send and/or receive text, voice, video, and multimedia files at theoretical transfer rates of up to 2Mbps.

19. LTE is a fourth-generation (4G) wireless broadband technology. LTE provides high-speed communication and data transfer with increased bandwidth capacity. It derives from the GSM/UMTS technologies and is faster than 3G. Unlike earlier mobile technologies, all communication in LTE devices is handled as data.

20. In order to maintain a stable Internet connection for mobile computing devices, such as Amazon UMTS/LTE Products, it is necessary to maintain an established user connection even if the user is changing locations, or the radio access environment surrounding the user is changing, while a connection is still active. “Handover” refers to the transfer of user connection from one access point to another. For Amazon UMTS/LTE Products, Defendant relies on the patented process to determine mobile device communication conditions for initiating a handover from one cell to another.

## DEFENDANT’S INFRINGEMENT

21. Defendant practices patented mobile telecommunications methods with respect to certain portable devices commercialized in this judicial district. Specifically, Defendant practices a method that determines the manner in which handover of service is performed among cells in a mobile network with respect to certain portable devices, such as tablets.

22. Amazon UMTS/LTE Products include, but are not limited to, the Kindle Fire 8.9”4G+LTE Tablet.

23. Each Amazon UMTS/LTE Product forms a mobile terminal that can be used on a mobile radio network such as that provided by a telecommunications company or a carrier. This network is formed by a plurality of cells.

24. Each of Amazon UMTS/LTE Products includes a processor and a memory device with instructions stored therein. Upon execution, these instructions perform a handover determination method in which each of Amazon UMTS/LTE Products searches for a better cell pursuant to the cell reselection process stated in the UMTS and LTE standards.

25. Each of Amazon's UMTS/LTE Products complies with the UMTS and LTE standards. As such, when communicating, they maintain an active list of base stations with which the Amazon UMTS/LTE Products have sufficient signal strength to communicate. The active list of base stations is used by each of Amazon's UMTS/LTE Products themselves to initiate cell reselection.

26. Specifically, when Amazon UMTS/LTE Products are used in a mobile radio network, they receive signals from base stations within range. In accordance with the UMTS and LTE standards, Amazon UMTS/LTE Products periodically measure the signals received from base stations in the vicinity for handover determination purposes. Then, each of Amazon UMTS/LTE Products generates an indication of the quality of the received signal. Each device produces a ranking of available base stations based on a set of measured criteria, including but not limited to the quality of each received signal.

27. Pursuant to the UMTS standard, Amazon UMTS/LTE Products initiate the switch to a new cell (the handover of communication) based on how the new cell is ranked and only if the new cell is ranked higher than the cell currently handling the communication for a given period of time. If the ranking of a potential new cell falls, such drop is an indication of a fall in the measured criteria (e.g., quality).

28. Under the UMTS standard, when Amazon UMTS/LTE Products identify a better candidate cell, they send a message to the base station currently servicing the communication.

Such message indicates that a switch should occur, such that communication is handed over to the new base station. The message sent by each of Amazon UMTS/LTE Products initiates the handover of service from a current cell to a new, better cell.

29. When Amazon UMTS/LTE Products operate under the LTE standard, the devices periodically measure the signals received from base stations in the vicinity for cell section and reselection purposes. Then, each of Amazon UMTS/LTE Products selects a suitable cell based on idle mode measurements and cell selection criteria, including quality of the signal. When camped on a cell, Amazon UMTS/LTE Products will regularly search for better cells according to the cell selection criteria. For example, if the ranking of the new cell rises above the ranking of the serving cell during a particular time frame, then the characteristics of the potential new cell may rise as a function of time. Conversely, if the ranking of the new cell falls below the ranking of the serving cell during a particular time frame, then the characteristics of the potential new cell may fall as a function of time. Thus, the behavior of the characteristics of the potential new cell over the certain time interval produces an indication of the rise or fall of at least one measurement or criteria as a function of time. If a better cell is found, then that better cell is selected which initiates the handover of Amazon UMTS/LTE Products from a current cell to the better cell. The initiation of a handover is based on the fact that, for example, the new cell did not fall below the quality of the serving cell during the time frame.

30. The patented method recited in one or more claims of the ‘834 Patent is performed when a cell reselection is made by any of Amazon UMTS/LTE Products when they are using either the UMTS or LTE standards to communicate.

**COUNT 1:**
**DIRECT INFRINGEMENT OF THE ‘834 PATENT**

31. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-30.

32. Taken together, either partially or entirely, the features included in Amazon UMTS/LTE Products including, but not limited to, the Kindle Fire 8.9”4G+LTE Tablet, perform the process recited in one or more claims of the ‘834 Patent.

33. Defendant directly infringes one or more claims of the ‘834 Patent by using Amazon UMTS/LTE Products, which perform the process defined by one or more claims of the ‘834 Patent. For example, without limitation, Defendant directly infringes at least claim 8 of the ‘834 Patent by using Amazon UMTS/LTE Products, including use by Defendant’s employees and agents, use during product development and testing processes, and use when servicing and/or repairing portable computing devices on behalf of customers.

34. By engaging in the conduct described herein, Defendant has injured Steelhead and are thus liable for infringement of the ‘834 Patent, pursuant to 35 U.S.C. §271.

35. Defendant has committed these acts of infringement without license or authorization.

36. To the extent that facts learned in discovery show that Defendant’s infringement of the ‘834 Patent is or has been willful, Steelhead reserves the right to request such a finding at the time of trial.

37. As a result of Defendant’s infringement of the ‘834 Patent, Steelhead has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant’s past infringement, together with interests and costs.

38. Steelhead will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Steelhead is entitled to compensation for any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

39. Steelhead has also suffered and will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them from directly or indirectly infringing the '834 Patent.

## DEMAND FOR JURY TRIAL

40. Steelhead demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

Steelhead respectfully prays for the following relief:

1. That Defendant be adjudged to have infringed the '834 Patent;

2. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly and/or indirectly infringing the '834 Patent;

3. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Steelhead for Defendant's past infringement and any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

4. An assessment of pre-judgment and post-judgment interests and costs against Defendant, together with an award of such interests and costs, in accordance with 35 U.S.C. §284;

5. That Defendant be directed to pay enhanced damages, including Steelhead's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

6. That Steelhead have such other and further relief as this Court may deem just and proper.

Dated: January 11, 2013

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Richard D. Kirk (#0922)
Stephen B. Brauerman (#4952)
Vanessa R. Tiradentes (#5398)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Plaintiff Steelhead Licensing LLC*

OF COUNSEL:

Eugenio Torres-Oyola
FERRAIUOLI LLC
221 Plaza 5th Floor
221 Ponce de León Ave.
San Juan, Puerto Rico 00917
(787) 766-7000
etorres@ferraiuoli.com